UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DWONE EATON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:11-cv-1688-WTL-MJD |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Dwone Eaton requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court now rules as follows.

### I.     BACKGROUND

Now 38 years old, Claimant Dwone Eaton has been receiving disability benefits in various forms since he was a young child on the basis of mental retardation and a secondary impairment of an affective disorder. At the time immediately preceding the decision at issue in this case, Eaton was receiving Title II and Title XVI benefits. However, on July 8, 2009, the Social Security Administration notified Eaton that, as of July 8, 2009, he was no longer disabled. Eaton timely filed a Request for Reconsideration and was notified that the determination to cease his disability benefits had been affirmed. Following the denial on reconsideration, Eaton requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing was held on December 8, 2010, before ALJ John Metz. Eaton appeared and testified at the

hearing; Eaton did not have a representative at the hearing. On December 20, 2010, the ALJ issued a decision denying Eaton benefits. The Appeals Council denied a request for review on October 21, 2011, after which Eaton filed this timely appeal.[1]

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant who was found disabled continues to be disabled, the ALJ follows an eight-step process for the Title II claim and a seven-step process for the Title XVI claim. 20 C.F.R. §§ 404.1594, 416.994.

In the first step for the Title II claim, the ALJ must determine if the claimant is engaging in substantial gainful activity ("SGA"); if so, the claimant no longer is disabled. 20 C.F.R. § 404.1594(f)(1). For the Title XVI claim, the performance of SGA is not a factor used to determine if the claimant's disability continues. 20 C.F.R. § 416.994(b)(5).

If the claimant is not engaged in SGA, step two for the Title II claim and step one for the Title XVI claim require the ALJ to determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in

---

[1] Additional medical history is not necessary to the determination of this appeal.

20 CFR Part 404, Subpart P, Appendix 1. If the claimant does, his disability continues. 20 C.F.R. §§ 404.1594(f)(2); 416.994(b)(5)(i).

At step three for the Title II claim and step two for the Title XVI claim, the ALJ must determine whether medical improvement has occurred. 20 C.F.R. §§ 404.1594(f)(3); 416.994(b)(5)(ii). Medical improvement is any decrease in the medical severity of the claimant's impairment(s) that were present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. §§ 404.1594(b)(1); 416.994(b)(1)(i). If medical improvement has occurred, the analysis proceeds to the fourth step for the Title II claim and the third step for the Title XVI claim. If not, the analysis proceeds to the fifth step for the Title II claim and the fourth step for the Title XVI claim.

At step four of the Title II claim and step three the Title XVI claim, the ALJ must determine whether the medical improvement is related to the ability to work. 20 C.F.R. §§ 404.1594(f)(4); 416.994(b)(5)(iii). If so, the analysis proceeds to step six of the Title II claim and step five of the Title XVI claim.

At step five for the Title II claim and step four for the Title XVI claim, the ALJ must determine if an exception to medical improvement applies. 20 C.F.R. §§ 404.1594(f)(5); 416.994(b)(5)(iv). There are two groups of exceptions. 20 C.F.R. §§ 404.1594(d), (e); 416.994(b)(3), (b)(4). If an exception from the first group applies, the analysis proceeds to the next step. If an exception from the second group applies, the claimant's disability ends. If no exception applies the claimant's disability continues.

Step six for the Title II claim and step five for the Title XVI claim require the ALJ to determine whether all the claimant's current impairments in combination are severe. 20 C.F.R. §§ 404.1594(f)(6); 416.994(b)(5)(v). If all current impairments in combination do not

significantly limit the claimant's ability to do basic work activities, the claimant no longer is disabled. If they do, the analysis proceeds to the next step.

At step seven for the Title II claim and step six for the Title XVI claim, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if he can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7); 416.994(b)(5)(vi). If the claimant has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step.

At the last step, the ALJ must determine whether other work exists that the claimant can perform, given his residual functional capacity ("RFC") and considering his age, education, and past work experience. 20 C.F.R. §§ 404.1594(f)(8); 416.994(b)(5)(vii). If the claimant can perform other work, he no longer is disabled. If the claimant cannot perform other work, his disability continues.

On review of the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ must

articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning ... [and] build an accurate and logical bridge from the evidence to his conclusion." *Id.*

## IV. THE ALJ'S DECISION

The ALJ found that the most recent favorable medical decision finding that Eaton continued to be disabled was a determination dated January 13, 2000 (the comparison point decision or "CPD"). At the time of the CPD, Eaton had the following medically determinable impairments: mental retardation and an affective disorder. These impairments were found to meet Listing 12.05C of 20 C.F.R. pt. 404, subpt. P, appx. 1.

The ALJ found that Eaton had not engaged in substantial gainful activity since July 8, 2009, the date the claimant's disability allegedly ended. The ALJ found that Eaton had the following medically determinable impairments: history of cardiac impairment that required surgery during infancy, a depressive disorder, a personality disorder, mild mental retardation on a rule out basis, and alcohol abuse on a rule out basis.

The ALJ then went on to find that medical improvement had occurred as of July 8, 2009; specifically, the ALJ found that the Eaton's impairments no longer met or medically equaled the same listings that were met at the CPD date.

The ALJ then found that, beginning on July 8, 2009, the claimant continued to have the following severe impairments: history of cardiac condition with abnormal rhythm, mild mental retardation or borderline intellectual functioning, a depressive disorder, a personality disorder, and possible alcohol abuse on a rule out basis. In considering Eaton's impairments, the ALJ found that Eaton had some limitation in concentration, persistence and pace and some limitation in interaction with others.

The ALJ then concluded that Eaton had the residual functional capacity ("RFC") to perform medium work with the following exceptions: Eaton cannot climb ladders, ropes, or scaffolds or work around hazards. Eaton is limited to performing simple, routine, repetitive tasks that involve simple instructions. He is able to adapt to change in the work-place within regular and normal expectations. The claimant should have no more than occasional contact with co-workers, supervisors, and the general public.

The ALJ then found that, given his RFC, Eaton could perform his past work as a garment sorter. The ALJ also found that, beginning on July 8, 2009, Eaton could perform other jobs that existed in significant numbers in the national economy. Accordingly, the ALJ concluded that Eaton's disability ended on July 8, 2009, and he has not become disabled again since that date.

## V.     DISCUSSION

Eaton argues that the ALJ erred when he proceeded with the hearing after Eaton indicated his wish to be represented by counsel. In support, Eaton points the Court to the following hearing testimony:

ALJ:        Since you are not represented, the law requires me to ask you a couple questions. When you got the hearing notice, it talks about representation. Is there a reason why you're not represented? You don't want to be represented or what?

EATON:      I didn't I was supposed to have - -

ALJ:        No. No. It's not a requirement. The choice is yours, but when you don't show up, the law requires me to ask you why. You don't –you don't want one? You didn't want anybody?

EATON:      Do I want somebody?

ALJ:        Well, it's up to you. You're here without one, so I assume you didn't want one.

EATON:      Oh, I did want one.

ALJ:        Did you try to get an attorney?

EATON:      No.

ALJ: No? Okay, on it–I have a question for you before we go on, Mr. Eaton. When you got your benefits before, it was based on psychiatric problems, mental problems.

EATON: Yeah.

ALJ: Okay? Is that still your allegation in front of me today?

EATON: Yes.

ALJ: Are you alleging any physical problems? No?

EATON: I had open heart surgery.

ALJ: Physical problems as in legs, that kind of stuff.

EATON: No.

ALJ: No, okay. So, the only thing that you're contending in front of me is that you're still disabled because of your mental problems?

EATON: Yes.

ALJ: Okay. Then let the record show that we'll go–we'll continue with the hearing then. At this time, I'm going to ask both my experts and the claimant to raise your right hands. I'll swear all three of you in.

The ALJ's failure to postpone the hearing in order for Eaton to secure representation was harmful, Eaton argues, because the ALJ's underlying decision is not supported by substantial evidence. The Court agrees.

A claimant has a statutory right to counsel at an administrative hearing regarding disability benefits. 42 U.S.C. § 406. If properly informed of that right, a claimant may waive it, but in order for that waiver to be valid, the ALJ must explain certain aspects of the representation to the claimant. *Ferguson v. Barnhart*, 67 Fed. Appx. 360, 366 (7th Cir. 2003) (citing *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994)). Those requirements are inapplicable here, because Eaton never so much as attempted to waive his right. Instead, he indicated that he wanted representation. As such, it was clear error for the ALJ to proceed with the hearing. In fact, this error is especially egregious given that Eaton's benefits were based on mental disability and his hearing testimony itself demonstrates that he did not fully understand his rights.

In the context of invalid waiver, "a claimant is not entitled to a remand based on inadequate notice of the right to representation unless the ALJ did not develop a full and fair record." *Ferguson*, 67 Fed. Appx. at 366 (citing *Binion*, 13 F.3d at 245). However, "if the ALJ does not obtain a valid waiver, the burden is on the [Commissioner] to show the ALJ adequately developed the record." *Ferguson*, 67 Fed. Appx. at 367 (citing *Binion*, 13 F.3d at 245). The same standard applies in this context. Therefore, the Court must assess whether the Commissioner has carried his burden to show that the ALJ developed the record fully and fairly by "prob[ing] the claimant for possible disabilities and uncover[ing] all of the relevant evidence." *Ferguson*, 67 Fed. Appx. at 366 (citing *Binion*, 13 F.3d at 245).

To determine whether an ALJ's development of the record qualifies as "full and fair," the Court considers a number of factors, including: "(1) whether the ALJ obtained all of the claimant's medical and treatment records; (2) whether the ALJ elicited detailed testimony from the claimant at the hearing (probing into relevant areas, including medical evidence on the record, medications, pain, daily activities, the nature of all physical and mental limitations, etc.), and (3) whether the ALJ heard testimony from examining or treating physicians." *Ferguson*, 67 Fed. Appx. at 367 (citing *Binion*, 13 F.3d at 245).

The Commissioner has failed to carry his burden. He baldly asserts that "the ALJ adequately developed the record," and faults Eaton for failing to identify any medical evidence the ALJ overlooked. Ironically, it is not Eaton's burden, but the Commissioner's, to identify the medical evidence that was used by the ALJ to fully and fairly develop the record. The Commissioner then goes on to argue whether Eaton's condition meets the requirements of "deficits in adaptive functioning" in the introductory paragraph of 12.05, when the ALJ himself found that Eaton was not disabled because he did not meet the requirement of "another

impairment" under subpart C.[2] That is the extent of the Commissioner's response, and it is insufficient.

Moreover, even if the Commissioner establishes that the record was developed fully and fairly, "the claimant has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap. Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant." *Binion*, 12 F.3d at 245. Eaton has pointed out an evidentiary gap: the hearing was held in December 2010, but the last updated records were in 2009. While no absolute duty to update records exists, *e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1099 (7th Cir. 2009), in this case the ALJ should have addressed this one-year gap in evidence, particularly with regard to the severity of Eaton's depression.

Finally, the Court notes another problem with the ALJ's opinion. In concluding that Eaton did not meet Listing 12.05C, the ALJ opined independently about the causation of Eaton's alleged functional deficits: "I find that it is the claimant's mild mental retardation or borderline intellectual functioning that causes these limitations. . . . So, I conclude that the claimant's depressive and personality disorders did not cause his limitations." In support of his conclusion, the ALJ cited Eaton's friend's testimony, and only thereafter noted that his conclusion was "consistent" with the DDS finding that Eaton's depression was no longer severely limited. The ALJ's determinations as to causation are not supported by any substantial medical or testimonial evidence and must be reversed. *See, e.g.*, *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 702 (7th

---

[2] The phrase "deficits in adaptive functioning" in the introductory paragraph and the subpart C requirement of "a physical or other mental impairment imposing an additional and significant work-related limitation of function" could overlap, but both the Commissioner and the ALJ approach these requirements as distinct, so the Court will do so as well. *See also* Introduction to Listing 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. . . . If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.").

Cir. 2009) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

## VI.    CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** to the Commissioner for a full review and rehearing.

SO ORDERED:    12/12/2012

                                     Hon. William T. Lawrence, Judge
                                     United States District Court
                                     Southern District of Indiana

Copies to all counsel of record via electronic communication.